CITY OF NEWARK, PETITIONER-RESPONDENT, v. ESSEX COUNTY BOARD OF TAXATION, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 2, 1975—Decided December 19, 1975

Before Judges KOLOVSKY, BISCHOFF and BOTTER.

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for appellant (*Mr. Richard M. Conley,* Deputy Attorney General, of counsel; *Mr. Harry Haushalter,* Deputy Attorney General, on the brief).

*Mr. Milton A. Buck,* attorney for respondent (*Mr. Melvin Simon* on the brief).

The opinion of the court was delivered by

BOTTER, J. A. D. The Division of Tax Appeals (Division) upheld certain of Newark's challenges to the 1974 Essex County Equalization Table adopted on March 10, 1974 pursuant to *N. J. S. A.* 54:3–17 and 18. The Division ordered the table revised and recomputed by subtracting from the sales price of certain real property sales the amount of mortgage "points" and closing costs paid by the sellers. Federal Housing Authority (F. H. A.) or Veterans Administration (V. A.) mortgage financing represented 90% or more of the sales price of each such sale, and the costs paid by the seller for the mortgage ("points") and/or closing charges were

conceded below to represent "extraordinary charges" within the meaning of *Trenton v. Mercer Cty. Bd. of Taxation,* 127 *N. J. Super.* 588 (App. Div. 1974).[1]

This court's decision in *Trenton* was thereafter modified, 66 *N. J.* 470, 473 (1975), by the Supreme Court's rejection of the Appellate Division's holding that such sales can be made usable for sales-ratio studies by subtracting the costs from the selling price. The Supreme Court held:

---

[1] The assertion that these charges were "extraordinary" was conceded before the Division. This concession was included in a stipulation of facts stated at the outset of the hearing and was repeated in the report of the Judge of the Division of Tax Appeals, as follows:

Counsel for the parties have also accepted the strictures of the *Trenton* case and by an exchange of information have largely stipulated the factual material necessary for this decision. They have agreed that on the sales in question, when paid by the seller, closing costs and points on the mortgage are extraordinary costs which should be excluded from the purchase price. They have also agreed that repairs paid by the seller as a condition of the sale are not extraordinary costs. They could not agree, however, on the question of commissions. The Attorney General contended that they should not be considered as extraordinary costs and the City urged that to the extent of the difference between six percent (6%) and seven and one-half percent (7½%) they should be so considered.

Respondent filed exceptions to the report, but did not except to the recited stipulation.

A sampling of data extracted from Exhibit P–2 introduced at the hearing shows the following:

| Sale No. | Sale Price | Mortgage | Points | Paid by Seller Closing Costs | Comm. |
|---|---|---|---|---|---|
| 3. | $22,800 | $22,500 | $1358 | $ - | $1700 |
| 6. | 12,650 | 12,100 | 847 | 650 | 948 |
| 11. | 21,500 | 20,400 | 2040 | 145 | 1612 |
| 20. | 25,900 | 25,500 | 1533 | 800 | 1942 |
| 21. | 16,750 | 16,500 | 1158 | 750 | 1172 |
| 33. | 31,000 | 29,500 | 2065 | 1000 | 2325 |
| 145. | 10,000 | 10,600 | 742 | 742 | 1000 |

On this appeal appellant asserts that Newark failed to sustain its burden of proving that the sales in question were substantially distorted, contending that the only proof of such distortion was by hearsay evidence. Appellant does not assert on this appeal that the amounts involved, if competently proved, were not extraordinary costs.

Once the sales price in an F.H.A. financed sale is shown to have been substantially distorted by extraordinary charges so that it does not reflect the true consideration for the property as between the buyer and the seller, it should be discarded and not used in the sales-ratio study at all. [66 *N. J.* at 473]

On this appeal the sole contention of appellant County Board of Taxation is that competent proof of the sellers' payments for "points" and closing costs was not offered, since only hearsay evidence of said expenses was offered. Most of the pertinent information contained in Exhibit P–2 listing the sales in question and the extraordinary costs was compiled from responses to questionnaires mailed by Newark's tax assessor to attorneys for mortgagees. The exhibit was compiled from their unsworn responses and in some cases from information furnished orally by brokers. Appellant stipulated that the exhibit reflected a compilation of such data, but objected to its legal sufficiency in proving the extraordinary costs.

 Pursuant to the Administrative Procedure Act hearsay is admissible in administrative proceedings. *N. J. S. A.* 52 :14B–10 (a) ; *Evid. R.* 2(3) ; *Weston v. State,* 60 *N. J.* 36, 51 (1972). In *quasi*-judicial proceedings hearsay may be employed to corroborate or reenforce competent proof, but "a fact finding or a legal determination cannot be based upon hearsay alone." *Id.* at 51. Thus, for the "substantial rights of a party" to be affected, a "residuum of legal and competent evidence" is required. *Id.*

 County boards of taxation have the duty to equalize aggregate assessments. *N. J. S. A.* 54:3–17; *Kearny v. Division of Tax Appeals,* 35 *N. J.* 299, 305 (1961) ; *Newark v. Essex Cty. Bd. of Taxation,* 124 *N. J. Super.* 76, 85 (App. Div. 1973). In the performance of such functions the boards are authorized to utilize records and other data which undoubtedly are hearsay. *Little Ferry Boro. v. Bergen Cty. Bd. of Taxation,* 18 *N. J.* 400, 404 (1955) ; *Newark v. Essex Cty. Bd. of Taxation, supra.* As stated in *Kearny v. Division of Tax Appeals, supra*:

* * * the entire equalization process does not and should not lend itself to rigid technicality and formalism. The legislative and judicial purpose is to secure as far as possible the equal distribution * * * of the county tax load among the municipalities. [35 *N. J.* at 311]

When reliable data is presented bearing on the performance of its equalization functions, the boards should "welcome such aid from the municipalities." *Little Ferry v. Bergen Cty. Bd. of Taxation, supra,* 18 *N. J.* at 405. The board cannot escape the performance of its duties if a municipality offers "credible evidence" that the use of certain sales has a distorting effect upon its equalization ratio. *Newark v. Essex Cty. Bd. of Taxation, supra,* 124 *N. J. Super.* at 85.

The legislative or *quasi*-legislative responsibilities of county boards of taxation and the Division of Tax Appeals as regards the equalization of aggregate assessments has been described in the seminal opinion of Justice Brennan in *Passaic v. Passaic Cty. Bd. of Taxation,* 18 *N. J.* 371 (1955). Speaking first of the mode of operation of the county boards, the *Passaic* court said they may avail themselves of "general information and expert knowledge which they may obtain in the performance of day to day administrative [duties]." *Id.* at 384. As to the hearing held pursuant to *N. J. S. A.* 54:3–18, the court said:

A municipality's objections to its own or another municipality's ratio does not convert the meeting into a judicial controversy with the objecting municipality or between or among the municipalities. Nor is the objecting municipality saddled with the burden of proof to sustain its objections by proofs admissible under the strict common-law rules of evidence. This is not so much because administrative agencies are not required strictly to adhere to the common-law rules of evidence, as it is that the board adjudicates no controversy upon such a hearing. In the discharge of its legislative or *quasi*-legislative function, it is its duty to seek all enlightenment that will help it so far as possible to avoid errors in its ultimate determination of assessment ratios. *Cf. Krauss v. A. & M. Karagheusian, Inc., supra.* It therefore receives and should receive any proofs reasonably calculated to assist it in reaching a correct determination of the ratios and the board should not reject such proofs or

refuse appropriate evidential weight to them out of an over-sensitive regard for their admissibility under rules of evidence applicable in judicial proceedings. See *Pennsylvania Railroad Co. v. Dept. of Public Utilities, supra; Krauss v. A. & M. Karagheusian, Inc., supra.* We repeat for emphasis that the entire process is legislative or quasi-legislative in nature, not proposed to adjudicate disputes with or among the municipalities but solely to enable the county board best and properly to perform its delegated function to secure as best may be a fair apportionment of the burden of county taxes among the municipalities of the county. [at 389]

The Division of Tax Appeals has a similar role in dealing with equalization of aggregate assessments. *Id.* at 393. The Division does not exercise "an appellate function governed by principles of appellate review comparable to the review of appeals from individual assessments * * *." The function "is the identical function charged in the first instance to the county board. * * * The complaining municipality is entitled to have the state body undertake the task upon a showing merely of error by the county board * * *." *Id.* at 393–394.

█ The *Passaic* case makes it clear that the Division has a duty to act upon the presentation of reliable evidence showing error, and it cannot avoid that duty because the complaining municipality fails to establish the proper ratio by proof meeting the standard of common-law rules of evidence. *Id.* at 386, 389. Once a *prima facie* showing of error is made, the Division of Tax Appeals has the duty to make a proper equalization, using "any reasonable and efficient method" it deems appropriate. *Willingboro Tp. v. Burlington Cty. Bd. of Taxation,* 62 *N. J.* 203, 219–220 (1973).

The foregoing demonstrates the unique nature of the process of computing equalization tables of aggregate assessments. The function performed being essentially legislative in nature, county tax boards and the Division of Tax Appeals may utilize such reasonable methods and data as appear reliable and appropriate to the purpose. Here sales and financing data had been accumulated from many sources that appear to have no interest in the outcome of this proceeding.

We are told that there were 225 responses relating to 294 questioned sales. Any party interested in these proceedings had the right to question or refute this data. No effort was made to subpoena parties to the sales as a means of checking the accuracy of the exhibit. Nor was any testimony offered by real estate experts as to prevailing practices which would cast doubt upon the general reliability of the data. There could be no secret to the practices reflected so pervasively in the data presented. Indeed, consistency in the range of charges relative to sales prices in this large number of transactions imparts an aura of intrinsic reliability to the exhibit.

Accordingly, we hold that the judge of the Division of Tax Appeals was correct in rejecting the contention that the evidence submitted was incompetent. He saw no harm in using these hearsay reports to challenge the sales-ratio study which he noted was, itself, "a statistical study." Bearing in mind that tables of aggregates reflect thousands of assessments in each municipality, administrative convenience and feasibility require the acceptance of reasonable methods in acquiring the data necessary to fulfill the legislative task. See *Trenton v. Mercer Cty. Bd. of Taxation, supra*, 66 *N. J.* at 473. More than 100 years ago it was recognized that detailed examination of individual values is impossible in the equalization process and that proof by evidence meeting common-law standards is not required. *State (Weehawken Tp.) v. Roe*, 36 *N. J. L.* 86, 88 (Sup. Ct. 1872), cited with approval in *Passaic v. Passaic Cty. Bd. of Taxation, supra*, 18 *N. J.* at 386–387.

We modify the judgment below by ordering the exclusion of each sale distorted by extraordinary costs. The judge's report upon which the decision of the Division was based suggests that 225 sales were brought into question by the data on Exhibit P–2. We count approximately 158 sales where the costs paid by the seller, exclusive of commissions, appear extraordinary in relation to the sales price. As to two such sales, for example, numbers 48 and 207, the exhibit

indicates relatively minor costs paid by the seller, and these sales should not be excluded from the sales study. The judgment should specifically identify each sale on the exhibit which is to be excluded. At present it describes the distorted sales only in general terms.

Accordingly, the cause is remanded to the Division of Tax Appeals so that an appropriate amended judgment may be entered. As modified, the judgment is affirmed.